**Albert WYCKOFF, as Heir and Representative of the Estate of Virginia Wyckoff, Appellant,**

v.

**GEORGE C. FULLER CONTRACTING COMPANY and Jayne Brown West, Appellees.**

**No. 05–10–00852–CV.**

Court of Appeals of Texas, Dallas.

Dec. 20, 2011.

---

Thomas A. Herald, Rachel Estelle Montes, Montes Herald Law Group, L.L.P., Irving TX, Rosalyn Renee Tippett, Tippett Law Office, Coppell, TX, for Appellant.

Thomas Richard Stauch, Nowak & Stauch, LLP, Dallas, TX, J. Brantley Saunders, Michael Shannon Kackley, Gay, McCall, Issacks, Gordon & Roberts, P.C., Plano, TX, for Appellee.

Before Justices BRIDGES, O'NEILL, and FILLMORE.

## OPINION

Opinion By Justice FILLMORE.

Virginia Wyckoff (Wyckoff) sued the George C. Fuller Contracting Company

(Fuller Contracting) and Jayne Brown West (West) for injuries suffered by Wyckoff during a visit to West's house.[1] In six issues, Wyckoff appeals from a take-nothing summary judgment rendered in favor of Fuller Contracting and West. We affirm the trial court's judgment.

## Background

Wyckoff attended a party at West's house during which West gave Wyckoff a tour of the house. During the tour, Wyckoff was injured after falling on the steps leading to the wine cellar. Wyckoff sued both West and Fuller Contracting, the contractor that built the house and sold it to West.

In her petition, Wyckoff alleged she was on West's "premises as a licensee" to attend a party. Without providing Wyckoff any warning "of the conditions which posed an unreasonable risk of harm," West allegedly led Wyckoff to a narrow, dark stairway that went down into the wine cellar. Wyckoff asserted the stairway was defectively designed and constructed by Fuller Contracting because (1) the lighting to the stairway was insufficient, and (2) the stairway did not comply with applicable building codes because it did not have hand or guard rails and, toward the bottom of the stairway, was completely open on one side. Wyckoff alleged the steps were narrow and uneven and became more difficult to see as she descended the stairway. Wyckoff further alleged she was injured when she fell on one of the steps. Wyckoff asserted a negligence claim against West and Fuller Contracting and a negligence per se claim against Fuller Contracting.

Fuller Contracting filed a combined traditional and no-evidence motion for summary judgment. Fuller Contracting sought a traditional summary judgment on grounds (1) Wyckoff could recover only on a premises liability claim and her negligence and negligence per se claims should be dismissed as a matter of law, and (2) it did not owe a duty to Wyckoff. Fuller Contracting also requested summary judgment on grounds there was no evidence the stairs constituted a dangerous condition or that Fuller Contracting had actual or constructive knowledge of the defect, owed Wyckoff a duty, breached any duty, or caused Wyckoff's injuries.

As summary judgment evidence, Fuller Contracting attached the affidavit of George Fuller stating Fuller Contracting completed construction of the house in May 2002 and sold the house to West on October 26, 2006. According to Fuller, on the date of the accident, Fuller Contracting did not own, possess, or occupy the house, was not engaged in any work at the house, and did not have control of the premises. Fuller Contracting also attached excerpts from Wyckoff's deposition in which she stated she had never been in West's house prior to the date of the accident; West gave her a tour of the house, including the wine cellar; when she stepped onto the top landing of the stairway, she could see the stairway was not well lit; the light from the top of the stairway caused a shadow to fall on the stairs; she could see a light coming from the wine cellar; she felt there was enough light to "go down it," but was uncomfortable doing so; she had only a brick wall to "hold on to"; and she fell on the second to the bottom step.

---

1. During the pendency of the suit, Wyckoff died from causes unrelated to her injuries. Albert Wyckoff, as heir and representative of Wyckoff's estate, was substituted as the plaintiff. For clarity, we will refer to Virginia Wyckoff as the interested party throughout this opinion.

West also filed a combined traditional and no-evidence motion for summary judgment. West moved for traditional summary judgment on grounds she did not willfully, wantonly, or through gross negligence injure Wyckoff and West had no duty to warn Wyckoff because Wyckoff had actual knowledge of the alleged dangerous condition. West also sought summary judgment on the grounds there was no evidence (1) she injured Wyckoff willfully, wantonly, or through gross negligence, (2) the condition of the premises created an unreasonable risk of harm to Wyckoff, (3) West had knowledge of the alleged dangerous condition, (4) Wyckoff did not have knowledge of the dangerous condition, (5) West failed to exercise ordinary care, or (6) any failure by West was a proximate cause of Wyckoff's injury.

As summary judgment evidence, West attached Wyckoff's deposition testimony in which Wyckoff testified that when she stepped into the stairway, she noticed it was not well lit; there was a shadow in front of her on the stairs; she could see a light coming from the wine cellar; she felt she could "go down it," but was uncomfortable doing so; she knew at the top of the stairway as she started down the steps that there was no rail on the left wall; she did not notice there was no rail until she was a "little ways" down and was reaching for something to "hold on to"; she did not feel uncomfortable going down the steps due to either the dim light or the lack of a rail; she thought she could "hold on to" the wall; and she fell on the second to last step of the stairway.

In her response to Fuller Contracting's motion for summary judgment, Wyckoff argued Fuller Contracting constructed the house and created the defects through its negligent design and construction of the stairway. She also stated "this summary judgment response clearly shows that this case is being pursued as a premise defect case as the evidence shows the focus has been on the defective conditions on the premises." Wyckoff asserted the person who creates the dangerous condition owes a duty to protect third persons against the condition and, because Fuller Contracting built the house, it was responsible for ensuring the premises met all applicable building codes and safety standards. Wyckoff also argued Fuller Contracting failed to conclusively negate there were dangerous conditions on the premises.

To her response, Wyckoff attached West's deposition in which West testified she purchased the house in October 2006; there are approximately five steps to the bottom of the wine cellar; she did not give Wyckoff any information or warnings about the wine cellar; there were no handrails on the stairway when she bought the house from Fuller Contracting; she has not heard of anyone else having problems with the stairway; she has not received any complaints about the radius, height, width, evenness, or texture of the steps; and her understanding is that none of the 30,000 people who toured the house during a Parade of Homes promotion prior to her purchase of the house had problems with the stairway. Wyckoff attached her own deposition testimony as set out above as well as testimony that she was not aware of anyone else who had fallen down the stairs; she knew she had one more step when she fell; and her foot went half off the step because the step was shorter than a previous step. Wyckoff also attached the affidavit of Jim W. Sealy, an architect. Sealy stated the stairway was in violation of applicable building codes due to the absence of a handrail and the presence of treads and risers that are irregular in shape. Sealy also noted the wall of the stairwell terminates before the end of the stairway and this dangerous condition "should have been protected with a hand/

guard rail." In Sealy's opinion, these deficiencies were the proximate cause of Wyckoff's fall. Attached to Sealy's report were pictures of the stairway showing the steps curve to the right, there are no handrails, and the right wall ends approximately two and one-half steps before the bottom of the stairway.

As to West's motion for summary judgment, Wyckoff argued West owed a duty because she had actual knowledge of a dangerous condition that was unknown to Wyckoff and failed to warn or make safe the dangerous condition. Wyckoff attached to her response to West's motion for summary judgment the same summary judgment evidence that she attached to her response to Fuller Contracting's motion for summary judgment.

The trial court granted Fuller Contracting's and West's motions for summary judgment without stating the basis for doing so.

### Standard of Review

We review a summary judgment de novo. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex.2010), *cert. denied*, —— U.S. ——, 131 S.Ct. 1017, 178 L.Ed.2d 829 (2011). A party moving for traditional summary judgment has the burden to establish that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex.2003). In determining whether there is a genuine fact issue precluding summary judgment, evidence favorable to the non-movant is taken as true and the reviewing court makes all reasonable inferences and resolves all doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005); *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 548–49 (Tex.1985). A defendant who con-

clusively negates at least one essential element of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment. *Frost Nat'l Bank*, 315 S.W.3d at 508–09.

We review a no-evidence motion for summary judgment under the same legal sufficiency standard used to review a directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex.2003). Under rule of civil procedure 166a(i), a party may move for summary judgment if no evidence exists to support an essential element of a claim or defense on which the adverse party would have the burden of proof at trial. TEX.R. CIV. P. 166a(i); *Gen. Mills Rest., Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 832 (Tex.App.-Dallas 2000, no pet.). The motion must specifically state the element for which there is no evidence. TEX.R. CIV. P. 166a(i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex.2009); *Bever Properties, L.L.C. v. Jerry Huffman Custom Builder, L.L.C.*, 355 S.W.3d 878, 887 (Tex.App.-Dallas 2011, no pet. h.). The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. TEX.R. CIV. P. 166a(i); *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex.2008) (per curiam). If the nonmovant brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact on the challenged element, a no-evidence summary judgment should not be granted. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex.2009). More than a scintilla of evidence exists if the evidence would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton*, 249 S.W.3d at 425, 427. In determining whether the nonmovant met its burden, we review the evidence in the light most favorable to the nonmovant. *King Ranch, Inc.*, 118 S.W.3d at 750.

When the trial court's order granting summary judgment does not specify the grounds relied upon, we must affirm the summary judgment if any of the summary judgment grounds are meritorious. *FM Properties Operating Co. v. City of Austin,* 22 S.W.3d 868, 872–73 (Tex.2000). When a party moves for a traditional summary judgment under rule 166a(c) and a no-evidence motion for summary judgment under rule 166a(i), we first review the trial court's judgment under the standards of rule 166a(i). *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 600 (Tex.2004). If the nonmovant failed to produce more than a scintilla of evidence under that burden, then there is no need to analyze whether the movant's summary judgment proof satisfied the rule 166a(c) burden. *Id.*

### Theories of Recovery

■ Wyckoff admittedly pleaded a premises liability claim against West. However, she argues she is not limited to a premises liability claim against Fuller Contracting, the creator of the allegedly dangerous condition. Rather, she contends, she may assert negligence, negligence per se, premises liability, and products liability claims against Fuller Contracting. She also contends Fuller Contracting's motion for summary judgment did not address "a potential products liability claim that could be considered pled from a broad reading of the Petition."

■ An owner or occupier of land in control of the premises may be liable for two types of negligence in failing to keep the premises safe: that arising from an activity on the premises, and that arising from a premises defect. *Clayton W. Williams, Jr., Inc. v. Olivo,* 952 S.W.2d 523, 527 (Tex.1997); *Gailey v. Mermaid Pools of El Paso, LLC,* 322 S.W.3d 346, 349 (Tex.App.-El Paso 2010, pet. denied). When the alleged injury is the result of a negligent activity, the injured party must have been injured by, or as a contemporaneous result of, the activity itself rather than a condition created by the activity. *Keetch v. Kroger Co.,* 845 S.W.2d 262, 264 (Tex.1992); *Scroggs v. Am. Airlines, Inc.,* 150 S.W.3d 256, 263 (Tex.App.-Dallas 2004, no pet.). When the alleged injury is the result of the condition of the premises, the injured party can recover only under a premises liability theory. *H.E. Butt Grocery Co. v. Warner,* 845 S.W.2d 258 259 (Tex.1992); *McDaniel v. Cont'l Apartments Joint Venture,* 887 S.W.2d 167, 171 (Tex.App.-Dallas 1994, writ denied) (op. on reh'g); *Gailey,* 322 S.W.3d at 349. " 'Adroit phrasing of the pleadings to encompass design defects, per se negligence or any other theory of negligence' does not affect application of premises liability law." *McDaniel,* 887 S.W.2d at 171 (quoting *First Fin. Dev. Corp. v. Hughston,* 797 S.W.2d 286, 291 (Tex.App.-Corpus Christi 1990, writ denied)); *see also Billmeier v. Bridal Shows, Inc.,* No. 02–08–00314–CV, 2009 WL 1176441, at *4 (Tex.App.-Fort Worth Apr. 30, 2009, no pet.) (mem. op.).

In this case, Wyckoff contends she was injured by defects in the design of the stairway that made it unreasonably dangerous. She does not assert she was injured as a contemporaneous result of any activity by Fuller Contracting at the premises. Further, any "adroit phrasing" cannot convert her claim into a products liability claim or affect the application of premises liability law. *See McDaniel,* 887 S.W.2d at 171. Consequently, based on the pleadings and the manner in which this case was presented to the trial court, we will analyze Wyckoff's claims against both West and Fuller Contracting as premises liability claims.

### Premises Liability

■ Premises liability is a special form of negligence in which the duty owed

to the plaintiff depends upon the plaintiff's status on the premises at the time of the incident. *Scott & White Mem'l Hosp. v. Fair*, 310 S.W.3d 411, 412 (Tex.2010); *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex.2005). The plaintiff is usually classified as either an invitee, licensee, or trespasser. *Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654, 655 (Tex.1999). Generally, a licensee "is a person who goes on the premises of another merely by permission, express or implied, and not by any express or implied invitation." *Tex.-La. Power Co. v. Webster*, 127 Tex. 126, 134, 91 S.W.2d 302, 306 (1936); *see also Osadchy v. S. Methodist Univ.*, 232 S.W.3d 844, 851–52 (Tex.App.-Dallas 2007, pet. denied). A social guest, such as Wyckoff, is generally classified as a licensee. *McClure v. Rich*, 95 S.W.3d 620, 624 (Tex.App.-Dallas 2002, no pet.); *Knorpp v. Hale*, 981 S.W.2d 469, 472 (Tex.App.-Texarkana 1998, no pet.).

■■■■■ The duty owed to a licensee is to not injure the licensee by willful, wanton, or grossly negligent conduct and, in cases in which the licensor has actual knowledge of a dangerous condition unknown to the licensee, to use ordinary care to either warn the licensee of the condition or make the condition reasonably safe. *City of Dallas v. Reed*, 258 S.W.3d 620, 622 (Tex.2008) (per curiam); *Chambers v. Kaufman Cnty.*, No. 05–11–00509–CV, 2011 WL 5088651, at *3 (Tex.App.-Dallas Oct. 26, 2011, no pet. h.) (mem. op.). In order to establish liability, a licensee must prove (1) a condition of the premises created an unreasonable risk of harm to the licensee; (2) the licensor actually knew of the condition; (3) the licensee did not actually know of the condition; (4) the licensor failed to exercise ordinary care to protect the licensee from danger; and (5) the licensor's failure was a proximate cause of injury to the licensee. *State Dept. of Highways & Pub. Transp. v. Payne*, 838

S.W.2d 235, 237 (Tex.1992) (op. on reh'g); *see also City of Dallas v. Thompson*, 210 S.W.3d 601, 603 (Tex.2006) (per curiam).

■■■■■ Prior owners of property generally owe no legal duty to keep a property safe after transferring the property to a new owner. *Lefmark Mgmt. Co. v. Old*, 946 S.W.2d 52, 53–54 (Tex.1997). However, a party who creates a dangerous condition may owe a duty of due care. *Id.* General negligence principles apply to a contractor who has left premises in an unsafe condition. *Allen Keller Co. v. Foreman*, 343 S.W.3d 420, 424 (Tex.2011) (quoting *Strakos v. Gehring*, 360 S.W.2d 787, 790 (Tex.1962)); *see also Redinger v. Living, Inc.*, 689 S.W.2d 415, 417 (Tex. 1985) (contractor who maintains control over the premises is "charged with the same duty as an owner or occupier"). Applying general negligence principles to this case, we conclude the duty owed to Wyckoff, whether by the premises owner, West, or by the contractor who allegedly created a dangerous condition, Fuller Contracting, is the duty owed to a licensee.

### Duty

■■■■■ Fuller Contracting and West both moved for summary judgment on the ground there was no-evidence they owed a duty to Wyckoff. Whether a duty exists is a question of law. *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 767 (Tex.2010). "Like any other negligence action, a defendant in a premises case is liable only to the extent it owes the plaintiff a legal duty." *Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 217 (Tex.2008). One of the elements a licensee must prove to establish liability for a premises defect, is that he did not actually know about the alleged dangerous condition. *Wal–Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex.2003) (per curiam). The licensor does not have a duty to the licensee if "the licensee has the

same knowledge about the dangerous condition as the licensor." *Id.*

In *Miller,* Wal–Mart hired a plumbing company to install any eyewash machine. A Wal–Mart employee escorted Bryan Miller, an employee of the plumbing company, and his coworker to a storeroom where there was a stairway leading to the water lines and shut-off valve. *Id.* at 707. Miller noticed Wal–Mart employees were unloading boxes from trucks and placing the boxes on the stairs. *Id.* Miller led his coworker up the stairs and noticed the stairs were slippery and boxes were stacked along both sides of the stairway's middle section. *Id.* at 708. When coming back down the stairs, Miller's coworker warned Miller the steps were slippery. *Id.* Halfway down the stairs, Miller released the handrail to walk around the boxes. Miller's foot caught on one of the boxes and Miller fell. *Id.* Miller sued Wal–Mart.

It was uncontroverted that Miller noted before he ascended the stairs that boxes were stacked on the stairway. *Id.* at 710. Further, as Miller ascended the stairs, he observed the stairs were slippery. *Id.* As he descended the stairs, Miller noticed the boxes obstructed his access to the handrail. *Id.* The supreme court noted that Miller "recognized all these factors—the very factors he alleges created a dangerous condition—before he fell on the stairs." *Id.* The evidence, therefore, established that, "prior to his fall, Miller perceived and thus had actual knowledge of the dangerous condition." *Id.* Accordingly, Wal–Mart did not have a duty to warn or make the premises safe. *Id.; see also Osadchy,* 232 S.W.3d at 853 (defen-

dant did not owe a duty because plaintiff's testimony established he was aware of condition of stairway and had same knowledge about alleged dangerous condition as defendant).

In her petition, Wyckoff alleged the stairway was unreasonably dangerous because it did not have a handrail, contained steps that were irregular, and was not sufficiently lighted.[2] Wyckoff's summary evidence established there were approximately five steps from the top of the wine cellar to the bottom. Standing on the landing at the top of the stairway, it is clear the stairway curves to the right and the width of the steps varies to compensate for the curve. Wyckoff testified that when she entered the stairway, she was aware of the poor lighting and the lack of a handrail. She also testified the steps were uneven. Wyckoff perceived, and thus had actual knowledge of, the allegedly dangerous conditions about which she complains. *See Miller,* 102 S.W.3d at 710; *Osadchy,* 232 S.W.3d at 853 (plaintiff's testimony indicated he was aware of condition of stairway and that he had same knowledge about alleged dangerous condition as defendant). Therefore, as a matter of law, neither Fuller Contracting nor West owed a duty to Wyckoff. *See Miller,* 102 S.W.3d at 709; *Osadchy,* 232 S.W.3d at 853.

The trial court did not err by granting Fuller Contracting's and West's no-evidence motions for summary judgment on the ground they did not owe a duty to Wyckoff. Accordingly, we need not consider the other grounds on which Fuller Contracting and West sought summary

---

2. Wyckoff also asserted the stairway did not comply with applicable building codes and, therefore, constituted negligence per se. However, any violation of building codes does not relate to whether West or Fuller Contracting had a duty to Wyckoff and, therefore, is not relevant to our analysis in this case. *See McDaniel,* 887 S.W.2d at 171, 172 (violation of city building codes relevant only to whether licensor failed to exercise reasonable care to reduce or eliminate risk from premises defect).

judgment. *See* TEX.R.APP. P. 47.1. We affirm the trial court's judgment.